OPINION
{¶ 1} Defendant appellant George Bragg appeals from his conviction and sentence in the Licking County Court of Common Pleas on one count of rape, a felony of the first degree, in violation of R.C. 2907.02 and one count of gross sexual imposition, a felony of the third degree, in violation of R.C.2907.05. The plaintiff appellee is the state of Ohio.
 {¶ 2} On December 26, 2002, appellant was indicted by the Licking County Grand Jury on two counts of rape and two counts of gross sexual imposition involving his two granddaughters, age seven and age eight.
 {¶ 3} On December 13, 2002, the girls were dropped off at the home of their mother for a weekend visitation. Appellant is the maternal grandfather of the girls. Appellant's home is behind the home of his daughter.
 {¶ 4} The father of the girls noticed that they were acting in an unusual manner when he picked them up from the weekend visitation. Upon their arrival home, Britnay indicated that something had happened at the home of her grandfather. After having his mother speak to the girls, the father took the girls to Licking Memorial Hospital. The children were first taken to the emergency room. The emergency room staff apparently contacted Kid's Place which is located on the premises of the hospital. The girls were interviewed and examined by Janet McCleary, a certified pediatric nurse. Ms. McCleary has been nursing since 1958, and specifically in pediatrics since 1961. She had been evaluating children that have allegedly been abused since 1977.
 {¶ 5} After interviewing the father and maternal grandmother, Ms McCleary interviewed Jessica. During this interview the child told Ms. McCleary that appellant had touched her and put his hand inside her. A physical examine of Jessica revealed a small abrasion and a broken blood vessel on her hymen. Photographs of the injuries were admitted at trial. Britnay did not disclose any abuse by appellant. A subsequent medical examination revealed no trauma to Britnay.
 {¶ 6} Detective Robert B. Huffman of the Newark Police Department was contacted concerning the allegations made by the children. Detective Huffman together with Kay Maynard, a social worker with Licking County Children's Services, interviewed the children at the police station. The appellant was contacted later that day and agreed to come to the police station to be interviewed by Detective Huffman again with Ms. Maynard present.
 {¶ 7} Detective Huffman advised appellant that he was not in custody and free to leave at any point in time. This initial interview was not tape recorded by Detective Huffman.
 {¶ 8} After initially denying any inappropriate behavior had taken place with his granddaughters, appellant subsequently claimed that the girls came to bathroom while he was in the bathtub and grabbed his penis. Upon being confronted by the detective as to the improbability of his story, appellant stated that he had been drinking. Appellant told Detective Huffman that he had gotten out of the bath tub and had his shorts pulled down to his knees. Both girls were in the bathroom with appellant. Appellant stated that both girls were fondling his erect penis while he was touching Jessica's vaginal area underneath her clothing. Appellant admitted to digital penetration of Jessica.
 {¶ 9} Initially, appellant agreed to give a taped statement, however, upon his return from the restroom, appellant was reluctant to cooperate. The taped statement and a transcription of the statement were admitted into evidence at trial.
 {¶ 10} Prior to the start of the trial the court held a hearing to determine whether the children were competent to testify at trial. Appellant and his counsel were permitted to attend and participate in voir dire of the children. At the conclusion of the hearing the court found the girls were competent to testify at trial.
 {¶ 11} Jessica testified appellant kissed her and her sister. Appellant pulled his shorts down and she saw his "private part." Britnay testified that "Grandpa was touching my private area." (T. at 289). She further testified that Jessica was touching appellant's private area. (Id.).
 {¶ 12} Appellant called his wife Marilyn Bragg and his daughter, the mother of the girls, in his defense.
 {¶ 13} The witnesses for the defense testified they did not notice any behavior out of the ordinary. They further testified that the families of appellant and the children's father harbor a great deal of animosity towards one another. The children's mother testified that Britnay disclosed the allegations against appellant to her and that she examined Britnay in the bathroom. The children's mother then confronted appellant with what the child had told her.
 {¶ 14} A jury trial commenced on June 11, 2003. The trial concluded on June 12, 2003 with a finding of not guilty of count two of the indictment, rape with respect to Britnay. The jury found appellant guilty of count one of the indictment, rape with respect to Jessica. Appellant was also found guilty of count three of the indictment, gross sexual imposition with respect to Jessica. The jury was unable to reach a verdict with respect to count four, gross sexual imposition with respect to Britnay. The State subsequently dismissed count four of the indictment prior to sentencing.
 {¶ 15} The court deferred sentencing and ordered a pre-sentence investigation report.
 {¶ 16} On July 14, 2003, the trial court conducted a sentencing hearing and sentenced appellant to a mandatory life sentence on the charge of rape and a sentence of three years of the charge of gross sexual imposition. The court ordered the sentences to run concurrently. The court further found appellant to be a sexual oriented offender.
 {¶ 17} Appellant timely filed a notice of appeal setting forth the following as a sole assignment of error:
 {¶ 18} "THE TRIAL COURT COMMITTED HARMFUL ERROR IN ALLOWING JANET McCLEARY TO TESTIFY AS AN EXPERT WITNESS HEREIN."
 {¶ 19} In his sole assignment of error, appellant contends the trial court erred by permitting nurse practioner Janet McCleary to testify as an expert witness because she lacked sufficient training and expertise, as well as utilization of generally accepted scientific methodology to be considered an expert witness. We disagree.
 {¶ 20} At the outset, it would appear that appellant's trial counsel did not object to the court declaring Ms. McCleary to be an expert. The following exchange occurred during trial:
 {¶ 21} MS. RICHTER: "Thank you, your honor. At this time, the State would renew its motion and ask that Ms. McCleary be deemed to be an expert in the field of pediatrics as it's relates to obtaining a history and finding and relating her physical findings. THE COURT: "Any objection to that? MR. STANSBURY: "Limit it to that particular area, no, your honor." THE COURT: "The court will make that finding limited to what was just stated. MS. RICHTER: "Thank you, your honor." (T. at 192).
 {¶ 22} On appeal appellant does not allege counsel was ineffective, or that the trial court failed to instruct the jury in an appropriate manner.
 {¶ 23} We have previously addressed appellant's argument with respect to the testimony of pediatric nurse practioners. InState v. Crum (Oct. 26, 1998), 5th Dist. No. 97-CA-0134, this court stated: "Nurse practioners may evaluate and treat patients consistent with their education, certification, and standards adopted by professional boards. R.C. 4723.151. Existing precedent confirms the propriety of allowing a nurse practioner to testify as an expert regarding medical findings. In State v.Ramos (June 12, 1997), Cuyahoga App. No. 70129, unreported, the Eighth District Court of Appeals held a nurse practioner's testimony regarding the sexual abuse of a child was proper since the testimony was primarily related to physical changes indicative of sexual intercourse. The Ninth District Court of Appeals held in State v. Pierce (Feb. 12, 1997), Summit App. No. 17684, a nurse practioner may testify regarding whether a patient's physical condition is consistent with a history of sexual abuse." See also, State v. Draughon, 10th Dist. No. 02-CA-895, 2004-Ohio-320 at ¶ 62; State v. Lee (July 31, 2003), 10th Dist. No. 02-AP-1340 at ¶ 33.
 {¶ 24} In the case at bar, nurse McCleary testified that she had been a practicing nurse since 1958. (T. at 143). She began specializing in pediatrics in 1961. (Id. at 143-44). She is certified as a pediatric nurse practioner in the state of Ohio. (Id. at 142). Ms. McCleary joined the child abuse team at Children's Hospital in Columbus in 1997. (Id. at 141). She began evaluating children that were alleged to have been abused in 1977. (Id. at 144). She is a member of the Licking County Kid's Team. (Id. at 143).
 {¶ 25} Nurse McCleary's testimony concerned obtaining a medical history from the parties involved. (T. at 151-53). She then conducted a physical examine and photographed the injuries. (Id. at 159-165). Nurse McCleary testified that the injuries she observed on Jessica were consistent with the history given to her by Jessica. (Id. at 165).
 {¶ 26} Pursuant to Evid. R. 702, a witness may testify as an expert if: "(A) the witness' testimony either relates to matters beyond the knowledge or experience possessed by a lay person or dispels a misconception common among lay persons; (B) the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony: (C) the witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the results of a procedure, test, or experiment, the testimony is reliable only if all of the following apply. (1.) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2.) The design of the procedure, test, or experiment reliably implements the theory; (3.) The particular procedure, test or experiment was conducted in a way that will yield an accurate result."
 {¶ 27} Moreover, under Evid. R. 703, the facts or data in a particular case upon which an expert bases his or her opinion or inferences may be those perceived by the expert or admitted into evidence.
 {¶ 28} The above qualifications of nurse McCleary clearly indicate that she was experienced in this area. Nurse McCleary's testimony as an expert relates to matters beyond the knowledge or experience possessed by lay persons. Evid. R. 702. As previously noted courts have recognized the ability of nurse practioners to testify as experts regarding medical findings, and to give an opinion as to whether a patient's physical condition is or is not consistent with a history of sexual abuse. Counsel for the appellant was permitted to cross examine nurse McCleary with respect to her adherence to standards of practice in this area. Therefore, it was not an abuse of discretion for the trial court to declare her an expert in this case. State v. Fleming (Aug. 4, 1999), 9th Dist. No. 98CA007003.
 {¶ 29} Accordingly, appellant's sole assignment of error is overruled.
 {¶ 30} For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed, and the case is remanded to the trial court for execution of sentence.
Hoffman and Wise, JJ., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed, and the case is remanded to the trial court for execution of sentence. Costs to appellee.